UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 9:11-cv-80552-KLR

SHERON HARRIS,

    Plaintiff,

vs.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

_____/

**REPLY AND MEMORANDUM OF LAW TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY**

Plaintiff, SHERON HARRIS, by and through undersigned counsel, replies to Defendant's Response in Opposition to Plaintiff's Motion to Disqualify, and states as follows:

**MEMORANDUM OF LAW**

The Defendant opposes the Plaintiff's Amended Motion to Disqualify. First, the Defendant disagrees with the Plaintiff's suggestion that this matter be referred to the Chief Judge of the Southern District (D.E. 164, at pp. 3-6). Defendant misunderstands that the Plaintiff cited to 28 U.S.C. 455(a) and §455(b) as bases for disqualification. As correctly explained in the Motion to Disqualify, if this Court does not voluntarily disqualify itself, the §455(b) basis for disqualification must already be referred to the Chief Judge (D.E. 156, at pp. 5-6). Plaintiff also directed

this Court to case law showing it is permissible to refer §455(a) motions to the Chief Judge (D.E. 156, at p. 6).  Therefore, Plaintiff simply suggested that if this Court did not voluntarily disqualify itself, that the entire Motion to Disqualify be referred to the Chief Judge.

On the merits, the Defendant has cited to the testimony it presented from Richard Adams (D.E. 164, at pp. 5-7).  The Defendant quotes extensively from the testimony "regarding the general disfavor of the percutaneous discectomy [and] the disproportionate number of procedures performed by the group that treated the Plaintiff" (D.E. 164, at p. 6).

The Defendant's citation to the testimony and its commentary of this portion of the testimony shows a fundamental misunderstanding of the procedural posture of this case.  More importantly, the Defendant's citation and commentary lend further credence to why disqualification is warranted.  This Court appeared to agree with the Defendant as if sitting as a fact-finder, rather than presiding over the post-verdict limited proceedings.

The Defendant had its day in court before the fact-finder of jurors.  The Defendant presented evidence, testimony and argument before the fact-finder.  The Defendant's evidence and arguments were rejected by the fact-finder.  The Defendant does not get a do-over in the post-verdict proceedings, as to the evidence or role of a fact-finder.

2

The Defendant suggests that this Court is free to consider Mr. Adams' testimony and reach opinions regarding the medical procedures in question. The Plaintiff has never suggested that this Court could not reach opinions, and would never suggest as such to any judge presiding over a case.

The issue is the comments expressed by this Court, and whether this Court's impartiality may now be reasonably questioned. Deeming the medical procedures to be "junk" was the Defendant and Mr. Adams' position, and it may be this Court's feeling. But this Court's mention of its opinion and using its phrase reasonably suggested to the Plaintiff that this Court might not fairly preside over the pending proceedings. It must be emphasized that in the pending proceedings, all evidence must be taken in the light most favorable to the Plaintiff, as the prevailing party.

The Defendant's views, Mr. Adams' views, and this Court's views of percutaneous disectomies is but one perspective that is outside the scope of the current procedural posture of this case. The Plaintiff presented testimony the medical procedure is not junk, and a jury of her peers sitting as a fact-finder agreed. Just as importantly, when this discussion arose at the hearing, it was Plaintiff's counsel who emphasized the procedural posture of this case and how a one-sided view of the evidence could not occur. This Court's pronouncement that there is no redeeming medical purpose with the medical procedures, in any

situation, reflects personal views that reasonably may call to question this Court's impartiality of the <u>legal</u> issues before this Court.

The Defendant also states that "this Court referred to the procedure in question as 'junk' came only after Plaintiff's counsel invited the term. Plaintiff merely seeks to take a passing comment by this Court and spin it into something more sinister than it actually is" (D.E. 164, at p. 7).

The Plaintiff did not "invite" this Court to offer its own opinions on the surgeries being "junk." Plaintiff's counsel had pointed out that the Defendant may believe it is junk, and Plaintiff was distinguishing the Defendant's views from the procedural posture of this case – again, after a jury rejected Defendant's views.

There was no reason for this Court to express its own views. Any views of this Court were far outside the discussion at issue during the hearing: the procedural posture of this case, with the Defendant having lost this case before the jury. The fact this Court mentioned these views unnecessarily has not been spun by the Plaintiff; it is the mention of the views and the apparent misunderstanding this Court is not sitting as a fact-finder that raised so much concern to the Plaintiff.

Additionally, the "junk surgery" reference should not be examined in isolation. The Defendant quotes, but declines to address the reference to extrajudicial sources by this Court. The Plaintiff had no way to anticipate that this Court, on its own accord, would refer to reading a newspaper article where the

surgery center had paid a large financial settlement for fraudulent claims. This article was not admitted into evidence or referenced in any post-verdict motions. It appeared to the Plaintiff, accordingly, that this Court's global views of <u>his</u> and every one of these medical procedures were influenced by extrajudicial sources -- outside the evidence in this case.

The Plaintiff was also treated by a different physician, who was not mentioned in the article. There was no evidence of misconduct by the Plaintiff's physician in this case, who was not sued in the lawsuit mentioned in this extrajudicial resource. This Court's comments, lumping the Plaintiff's physician into this "fraud," demonstrates that this Court went outside the evidence in this case and believes the Plaintiff's physician must have been motivated by money or some other reason than his patient's health.

The pending proceedings before this Court include an examination of the medical treatment by this physician, and this medical procedure. Even in the appropriate procedural posture (in the light most favorable to the Plaintiff), this Court's impartiality reasonably is in question.

Thus, for the reasons stated above and in more detail in the Amended Motion to Disqualify, Plaintiff respectfully requests that her motion be granted.

I HEREBY CERTIFY that a true copy of the foregoing has been electronically filed with this Court via CM/ECF, and was furnished to JAMES K.

CLARK, ESQ. (JClark@clarkrobb.com), 19 West Flagler St., 14th Floor, Miami, FL 33130, by email, on July 8, 2013.

        David J. Glatthorn, Esq.
        DAVID J. GLATTHORN, P.A.
        506A Datura Street
        West Palm Beach, FL 33401
        glatt@msn.com
            and
        BURLINGTON & ROCKENBACH, P.A.
        Courthouse Commons/Suite 430
        444 West Railroad Avenue
        West Palm Beach, FL 33401
        (561) 721-0400
        Attorneys for Plaintiff
        aah@FLAppellateLaw.com
        jew@FLAppellateLaw.com


By: /s/ Andrew A. Harris
    ANDREW A. HARRIS
    Florida Bar No. 10061